## THE GARDEN CONSTRUCTION & SERVICE CO., INC., v. WAGUESPACK

(June 4, 1928. Opinion and Decree.)
(July 7, 1928. Rehearing Refused.)

Wm. McL. Fayssoux. of New Orleans, attorney for plaintiff, appellee.

W. J. & H. W. Waguespack, of New Orleans, attorneys for defendant, appellant.

JONES, J. Plaintiff, as subrogee of Harold J. Neale, sued defendant on March 7, 1923, on quantum meruit for five hundred sixty-five and 20-100 dollars, the sum alleged to be due for labor, filling and plants furnished at his residence, 15 Newcomb Boulevard, in this city, between July 17th and September 6, 1922.

The itemized account filed under Judge's order upon defendant's plea of vagueness shows the following:

460¼ hours of labor at 50c per hour $230.13
113 loads of filling at $2.50 per load 282.50
For shrubs, manure and lumber _____ 52.57

Defendant answered as follows.

In July, 1922, he made a verbal contract with plaintiff to grade and fill terrace in front of and around his residence on his lot at 15 Newcomb Boulevard, measuring 60 feet by 119 feet, to plant grass, shrubs, vines, flowers and fix the yard, all for the sum of two hundred dollars; that Neale did not carry out his contract in any particular and that after two months of useless waiting he was obliged, after putting Neale in default, to employ Werner, another gardener for the reasonable price of eighty-one and 50-100 dollars to complete the partially performed contract.

Finally, as plaintiff in reconvention, defendant prayed for a judgment against plaintiff in the sum of eighty-one and 50-100 dollars, as per the itemized receipted bill of the second gardener, Werner.

After the taking of voluminous testimony both by commission and in open court, there was judgment for plaintiff in the amount claimed with dismissal of reconventional demand.

Defendant has appealed.

As the oral evidence on the existence of contract vel non is highly conflicting and in many respects contradictory, we have based our conclusion on this point largely on the letters of plaintiff and defendant.

On August 7, 1922, defendant wrote plaintiff as follows:

"August 7th, 1922.
"Mr. Harold J. Neale,
"1303 Calhoun St.,
"City.
"Dear Sir:
"I am today in receipt of your bill for $176.50, which I am returning to you as it is evidently in error.
"I made a contract with you whereby you agreed to grade, terrace, fill, plant grass, shrubs, vines on house and some flowers for $200.00 and as you expressed it put the yard in good condition with a few shrubs and flowers.
"Up to the present you have only planted grass, and graded yard, which by the way will have to be gone over, as it is not quite level in the back, and the terrace in the front has slid slightly; also you have not touched the ground between sidewalk and street.
"I would appreciate your rushing the balance of the work, all possible, as I am anxious to get finished.
"Very truly yours,
(Signed) "F. P. Poche Waguespack
"FPW—
"Personal
"15 Newcomb Blvd."

On August 9th, defendant again sending the bill answered in part, as follows:

"I note that you say you have a contract with me whereby I agreed to grade, terrace, fill, plant grass, shrubs, vines on house and some flowers for $200.00. It is my recollection that the price agreed upon was between $200 and $250.00, for which amount I was to do all possible and make a satisfactory showing. This I intend to

do. You will remember that after our first agreement I talked with you in the back yard regarding filling and you asked what it would cost and I said it would take about 20 to 25 yards of filling and the cost would be about $3.00 per yard. You will note that I obtained it for you at $2.50 per yard. I expect to have to patch the terrace for some time to come, as I explained to you that it might crack and not to worry about it if it should. When the grass roots become established the soil will remain more stationary. I will have the cracks patched at once and intend to finish the planting of grass between the sidewalk and the street at the same time."

It will be noted that Neale in this letter does not deny the contract alleged by plaintiff, but says it was his recollection that he had agreed to do "all possible and make a satisfactory showing" for a price not definitely fixed, but somewhere between two hundred dollars and two hundred fifty dollars.

On August 15th, defendant again returned Neale's bill and again wrote that the agreed contract price was two hundred dollars, not two hundred fifty dollars, that yard and terrace were not "holding up" and that he would not send check for two hundred dollars until the work was satisfactorily completed.

On August 17th, Neale wrote that he had not planted shrubs and vines because he did not think defendant was satisfied with the grading and he wished that properly done before going further, that he was leaving the City until September 5th and would be represented by Chase, if defendant wished anything.

Apparently there was a break in the correspondence for thirty days as the next letter is one from defendant, dated September 16th. In this letter defendant returned Neale's bill for five hundred sixty-five and 20-100 dollars, dated September 14th and refused to recognize it. He again stated that he has a contract for two hundred dollars, by which Neale was to grade, terrace, plant, etc., that work was incomplete, and he formally notifies Neale that he will have some one else complete the work and hold him for damages, if the contract it not executed by October 15th.

On September 21st, Neale wrote returning the bill for five hundred sixty-five and 20-100 dollars and giving a history of the case from his viewpoint. In this letter he says when he was asked by defendant to make a contract for the work, he said he preferred having someone else do the actual work, under his supervision, unless defendant would permit him to draw up complete plans and specifications.

"You asked me what could be done for $200.00 and I said I thought it would make a fair start and be sufficient for the present, but that price would not include my fee of $50.00. I did say that I would not make the 10% charge if I had the work done by my organization. You then asked if $250.00 would cover and I said I would try and make a satisfactory showing, and if you desired I would make that amount go as far as it would and then advise you. This you agreed to and the work was done and you were notified on the first of August by the aforementioned bill dated July 31st.

"You returned the bill and under date of August 9th I made you a full explanation of it and returned the bill to you. On Aug. 15th you again returned the bill and made further complaints. Upon receipt of that letter, I went to your place with Mr. Chase and Mr. Ramsey to look over the work. While looking it over you came out of your house and we all discussed the work done, as you no doubt recollect. I explained to you that I was leaving the city for about three weeks and wanted to have these gentlemen carry on the work during my absence, and advised you that any agreement or changes made with these gentlemen would be the same as if made by me. You complained

at that time that the grade of the back yard was not satisfactory to you. I said it was filled as much as you were told it would be under the original price that you specified as being willing to expend. You said you wanted more filling and I told you I would have it done but that it would cost you more than the original pr'ce, as you would have to pay for the additional material and labor, to which you agreed. I agree to repair the terrace in front without further charge, but I impressed it on you that you were to pay for the extra work done in the back yard."

Here Neale admits that he was to repair the terrace at his own expense.

It will be noted that Neale claims in this last paragraph that defendant agreed verbally on August 15th at his residence in the presence of Chase and Ramsey to pay for back yard filling additional to that provided in the original contract, as the grading of the back yard was not satisfactory.

This purported oral agreement of defendant is Neale's sole justification for nearly tripling the bill and even the most credulous could hardly extend a verbal promise to pay for additional filling in the back yard as authority for going to such apparently extreme lengths in both filling and labor.

On September 27th, defendant wrote a long letter again insisting upon completion of the contract, denying all verbal changes and specifying the many particulars in which the work was totally unsatisfactory. We quote from this letter the following relevant paragraphs:

"This is true; it is also true that we discussed price, etc., for some time, but I distinctly told you that I would not make any agreement unless I knew the exact cost, and that the price agreed upon must include 'fee for your services. * * *

"* * * I asked you whether you could take job for $150.00 to $200.00; to which you replied 'Yes, for $200.00 I can do very nicely,' and as you expressed it, you would 'Fill, grade, terrace, plant grass, shrubs, vines, and some flowers, and fix the yard in first class condition for $200.00 and this was the agreement between us.

"You, Mr. Chase, Mr. Ramsey, and myself then inspected the work that had been done.

"The front terrace had slid and was full of holes, the back yard was not leveled; grass had not been properly planted, or in any event had not properly grown, side yard and neutral ground between sidewalk and street had not been touched, and neutral ground was full of rocks.

"You yourself admitted work was not properly done, and told Mr. Ramsey he would have to do the work over again as you could not afford to ruin your reputation with such a job. You told him to order more filling for the back yard, replant grass, and reconstruct terrace which you advised your foreman had never been lined off properly in the first place.

"When you mentioned ordering more filling I suggested to you that you get some different filling and not get any more sand, to which you replied that you knew your business, and that sand was the proper thing, and that you would show me in the final results. You also advised me that you were leaving the city, and that Mr. Chase would take your place in your absence. And at this time the work that had been done was in such a condition that 'It would ruin your reputation.'

"* * * Today the yard is in a terrible condition. In the back it is very uneven, sandy, and with patches of grass here and there, and what grass there is, is not of good quality, but are for the most part weeds. No attempt has been made to plant a vine, shrub, or flower, and you send me bill for $565.20 and expect me to pay same, or to pay, as you stated over the phone the other day, for materials used.

"You admitted to me over the phone the other day when I called you up on receipt of bill, that you did not expect me to pay for labor, as you knew the work had not been properly performed, and that you had discharged your foreman for incompetency, but that you expected to be paid for materials used."

In his testimony, page 4, Neale confirms defendant's statement in part as follows:

"Defendant said, 'Would $150.00 furnish me any shrubs?' I said, 'It all depends on how much time it takes to do the first cleaning up and getting the place in readiness for the plants.' He said, 'Would $200.00 do anything?' I said, '$200.00 would make you a nice start and get it ready for the fall planting.'"

Chase differs from Neale as to conversation of August 15th. He says he heard nothing at that time of any prior agreement or prior bill, but Neale agreed to do all additional grading free of charge and defendant agreed to pay for "any further filling or anything to beautify the place."

Chase further says that on August 16th, after Neale left, defendant told him of the contract for two hundred dollars and he wired Neale for further instructions before going on.

On cross-examination, he states that the general effect of the conversation was that the grading had not been done, i. e. the filling up of the ruts in the terrace, where the excessive rains had washed the earth away.

He admits that he went there only three times during the three weeks from August 15th to September 5th, when he was supervising the work, which was directly managed by Ramsey as foreman, that no planting whatever was done during that time, but all the labor was spent in filling up the back yard, in regrading the terrace and in seeding Bermuda grass.

The evidence of Ramsey, the foreman, whom Neale says he discharged after this job was finished, was taken by commission in Worcester, Mass. After testifying that the account was correct from records in his diary, he testifies as follows:

Interrogatory No. 10:

"Were you present at any conversation or discussion between Neale and defendant wherein manner of work done and to be done was discussed, if so kindly state what said conversation or discussion transpired?"

Ans. "On August 10th, I was present when defendant and Neale were discussing the appearance of some spots on the terrace not full covered, Neale agreeing to correct and same was done on the following day."

He further testifies that most of the labor was used in grading, which was frequently stopped by rain, but some labor was spent in sowing grass and cleaning up, that "slips" were signed for each load of filling.

It is thus seen that neither Chase nor Ramsey agree with Neale as to the details of the purported conversation of August 15th.

Although Bartholomew testified that he had furnished a large number of loads of filling, he could not give the exact number and the signed slips were never found.

As the record shows that the lot was only 60x119, that a two-story house was built thereon with a ten-foot concrete driveway from front to rear and the former owner, Werk, had, prior to sale to defendant, nearly filled the back yard to grade, it hardly seems probable that 113 yards of filling could have been wisely or properly used thereon. Furthermore, the terrace had also been built originally by Werk and the regrading was necessitated solely by the fact that the defendant had a porch on the front.

Neale admits that defendant at first insisted on a fixed price for work without plans; it hardly seems probable that he would have given "carte blanche" for practically unlimited material and labor three weeks later on August 15th, espe-

cially when the record shows that he was justly complaining at that time both of the quality and quantity of the work.

For above reasons we conclude that defendant had a contract with Neale for the work at a fixed price of two hundred dollars.

As to reconventional demand, Werner, an experienced reputable florist, testifies work was badly done, when he and one man finished the terrace and planted all the grass and shrubs in two and one-half days for eighty-one and 50-100 dollars, which amount he had been paid by defendant. He charged for grading terrace in front of residence, twenty-five dollars and for shrubs, plants and winter grass fifty-six and 50-100 dollars. Of this amount five dollars was for winter grass and six dollars for planting boxes upstairs. He would have charged only one hundred fifty dollars for all the work done there by Neale.

On cross-examination he says he re-graded the terrace with dirt already there and then spaded it up for the winter grass. His bill was dated November 1st and paid November 13, 1922.

Defendant, as plaintiff in reconvention, is not entitled to recover for the five dollars winter grass, for the six dollars upstairs planting, or for spading up terrace which we estimate at five dollars, as they were not included in the contract, but he is entitled to recover for the balance of the amount paid Werner as the regrading of the terrace and planting of shrubs was specifically covered.

For above reasons, it is now ordered, adjudged and decreed that plaintiff, the Garden Construction Service Co., Inc., have judgment against defendant, F. P. Poche Waguespack, in the sum of two hundred dollars, with legal interest from judicial demand.

It is further ordered, adjudged and decreed that defendant, F. P. Poche Waguespack, as plaintiff in reconvention, have judgment against plaintiff, The Garden Construction & Service Co., Inc., in the sum of sixty-five and 50-100 dollars, with legal interest from November 13, 1922.

It is further ordered that defendant pay the costs of the lower court and plaintiff the costs of this appeal.